# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. STEVE FUTRELL AND DAVID GORNSTEIN, | ) ) ) ) | |
| Plaintiffs, | ) ) | No.: 4:14-CV-02063-ERW |
| v. | ) ) | |
| E-RATE PROGRAM, LLC, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant E-Rate Program, LLC's Motion for Judgment on the Pleadings [ECF No. 48].

I.     **BACKGROUND**

In December 2014, Plaintiffs/Relators Steve Futrell and David Gornstein ("Relators"), filed this *qui tam* action on behalf of the United States, asserting Defendant E-Rate Program, LLC ("Defendant") violated the False Claims Act ("FCA"), 31 U.S.C. § 3729, by intentionally and knowingly submitting false claims to defraud the United States government. Relators are former employees of Defendant. Defendant filed a Motion to Dismiss Relator's First Amended Complaint, which the Court granted on August 10, 2016. On September 9, 2016, Relators filed its Second Amended Complaint ("Complaint"). The action seeks to recover damages and civil penalties on behalf of the United States government arising from Defendant submitting false or fraudulent claims to obtain funds from the federal Library Universal Service Support Program,

1

commonly known as the "E-Rate Program."[1] The Complaint alleges Defendant submitted false or fraudulent claims to the United States government by failing to comply with the E-Rate Program's competitive bidding and document retention requirements. The United States chose not to intervene in this case and is therefore not a party, but it is a real party in interest. The FCA is the United States' primary tool to redress fraud on the government. Thus, the United States has a keen interest in the development of the law in this area and in the correct application of the law in this case.

Defendant moves this Court, pursuant to the Federal Rules of Civil Procedure ("FRCP") 12(h)(2)(B) and 12(c), to dismiss Relators' Complaint with prejudice. Defendant argues the Complaint should be dismissed because Relators fail to state a claim against Defendant under the FCA, 31 U.S.C. §§ 3729 *et seq.*, because the E-Rate Program is not subject to the protections of the FCA. On June 6, 2017, the United States submitted a Statement of Interest in response to Defendant's Motion for Judgment on the Pleadings.

The E-Rate Program was established by the 1996 Telecommunications Act and regulations promulgated by the Federal Communications Commission ("FCC"). It is administered by the Universal Services Administrative Company ("USAC") under the direction of the FCC. The USAC is responsible for ensuring applicants and service providers comply with the E-Rate Program's rules and regulations. The USAC is an independent non-profit organization which has been designated by the FCC to administer the E-Rate Program. The E-Rate Program is funded by mandatory contributions of interstate telecommunications carriers. *See* 47 U.S.C. § 254(d); 47 C.F.R. § 54.706.

---

[1] The E-Rate Program was established by the 1996 Telecommunications Act. The "E-Rate Program" has been referred to as the "federal Library Universal Service Support Program" by the United States; and referred to as the "Schools and Libraries Program of the Universal Service Fund" by Defendant. The Court will refer to it as the E-Rate Program.

In a motion for judgment on the pleadings, the Court accepts the allegations in the complaint as true. The following facts are alleged in Relators' complaint.

The E-Rate Program helps schools and libraries obtain affordable telecommunication services, broadband internet access and internal network connections. The rules and regulations require competitive bidding for the services funded by the federal government. [ECF No. 36 ¶ 5]. The rules and regulations also require document retention evincing the competitive bidding process for the services. *Id.*

Defendant contracted with numerous schools and school districts to assist in obtaining funds under the E-Rate Program. This included providing assistance with the regulations for compliance with the competitive bidding requirements and assistance with completing the paperwork required to request and obtain funds under the E-Rate Program. Defendant's representatives certified compliance with the E-Rate Program requirements for the school systems without ensuring there was retention of supporting documentation to evidence competitive bidding. Defendant did not follow the requirements for competitive bidding, falsely certified competitive bidding occurred, and failed to retain supporting documentation for competitive bidding.

In its motion, Defendant argues Relators failed to state claim for relief, because the E-Rate Program, administered by the USAC and funded by the Universal Service Fund ("USF"), is not subject to the protections of the FCA. Therefore, it believes the Complaint must be dismissed.

## II.     STANDARD

Rule 12 of the Federal Rules of Civil Procedure allows the Court to dismiss an action for failure to state a claim. Under Rule 12(h)(2)(B), a motion to dismiss for failure to state a claim

3

may be brought by a motion under Rule 12(c). Rule 12(c) provides "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."

The Court applies the same standard in a 12(c) motion as applied in a 12(b)(6) motion to dismiss. *See NCMIC Ins. Co. v. Blalock*, No. 4:05CV805 HEA, 2005 WL 1926233, at *2 (E.D. Mo. Aug. 10, 2005) (citing *Westcott v. Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990)). The Court will grant the motion "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id*. On a motion for judgment on the pleadings, the Court "accepts as true all facts pleaded by the non-moving party and grants all reasonable inferences from the pleadings in favor of the non-moving party." *Id*.

### III. DISCUSSION

The FCA imposes liability on any person who:

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; . . . (G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government. 31 U.S.C. § 3729(a)(1).

Defendant argues the E-Rate Program does not qualify as "claims" under the FCA's statutory definition, because the Government does not provide any portion of the funds requested through the E-Rate Program. In addition, they argue the USAC is not an officer, employee or agent of the United States Government. Therefore, they believe, even if all of Relators' allegations are true, Relators cannot state a claim under the FCA and its Complaint must be dismissed.

    A.    *The Meaning of "Claims" and "Provides" under the FCA*

The FCA defines "claim" as:

> (A) means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that--
> > (i) is presented to an officer, employee, or agent of the United States; or
> > (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government--
> > > (I) provides or has provided any portion of the money or property requested or demanded; or
> > > (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded. 31 U.S.C. § 3729(b)(2).

Defendant argues none of the funds for the E-Rate Program are provided by the Government, as required by the definition of claim. Defendant states no court in the Eighth Circuit has directly addressed this issue, and instead cites to a Fifth Circuit Court of Appeals case, *United States ex rel. Shupe v. Cisco Systems, Incorporated*, 759 F.3d 379 (5th Cir. 2014). In *Shupe*, the court held "there are no federal funds involved in the [E-Rate Program], and USAC is not itself a government entity," therefore, the Government does not provide any portion of the requested money under the FCA. *Id.* at 388. The Fifth Circuit stated "provide" means "any portion of the money requested when the Government has given even a drop of treasury money to the defrauded entity." *Id.* at 383. The Fifth Circuit found the FCA's application is limited to "instances of fraud that might result in financial loss to the Government." *Id* at 385. The court reasoned, because the money in the USF is not from the United States Treasury, the United States "does not have a financial stake in its fraudulent losses." *Id.* Defendant asks the Court to apply the Fifth Circuit's holding to this matter.

Relators and the Government both argue the holding in *Shupe* is flawed and should not be followed. Relators argue the USAC is not a private charity, and it would not have access to the billions of dollars the E-Rate Program distributes annually, but for the Government making those funds available to the USAC. They believe this relationship between the Government and the

USAC is equivalent to the Government providing funds for the E-Rate Program. In addition, they argue the requirement the funds must come from the U.S. Treasury is not found in the statute and runs contrary to the decisions of other courts that have found no such requirement.

The Court agrees with the Government when they stated the "plain meaning of the term 'provided' is 'to make available.' The American Heritage Dictionary 1411 (4th Ed. 2000); *see U.S. ex rel. Sanders v. American-Amicable Life Ins. Co. of Tex.*, 545 F.3d 256 (3d Cir. 2008) (defining the term 'provide' in the FCA as having its plain meaning of 'furnish' or 'make available')." In *Sanders* the issue was whether the United States provided money paid out of military service members' salaries to a fraudulent savings plan. The Third Circuit concluded "it was the defrauded military personnel who furnished or made money available to the defendants – and not the federal government – because it was those personnel who decided to participate in the fraudulent savings program." *Id.* at 260. Unlike in *Sanders*, where the soldiers had discretion to make their funds available to the program, the USAC has no such discretion with respect to E-Rate Program funds. E-Rate Program funds are provided as required by the FCC regulations, with the FCC as the final arbiter. Thus, the United Sates "makes available" the money requested by E-Rate applicants.

When USAC administers the E-Rate Program, it is done on behalf of the Government and subject to the control of the FCC. In *Heath v. Wisconsin Bell Incorporated*, the Eastern District of Wisconsin found "[t]he federal government required the common carriers to pay into the Fund; in the absence of such requirement, the carries would not have made any payments. Thus, the federal government made the funds available. Moreover, the Fund is little more than a mechanism to pay for a federal program." 111 F.Supp.3d 923, 926 (E.D. Wis., 2015). "The fact that the government requires entities to contribute directly to the Fund rather than using a two-

6

step process of collecting money through taxes and transferring it to the Fund should not be a basis for enabling a party who attempts to defraud the Fund to escape liability." *Id.* at 928.

Although the Fifth Circuit in *Shupe* came to a different result, the Court finds the reasoning in *Heath* more persuasive. In addition, the Supreme Court has established the FCA should not be construed narrowly. *See United States v. Neifert-White Co.*, 390 U.S. 228, 232 (1968). The objective of Congress was "broadly to protect the funds and property of the Government from fraudulent claims, regardless of the particular form, or function, of the government instrumentality upon which such claims were made." *Rainwater v. United States*, 356 U.S. 590, 592 (1958). The Court concludes the money in the E-Rate Program was provided to the program by the Government and is protected by the FCA. Therefore, the Relators have a valid claim against Defendant in relation to the E-Rate Program.

      B.     *The USAC as an Officer, Employee, or Agent of the United States.*

Defendant also argues Relators' claim fails under 31 U.S.C. 31 § 3729(b)(2)(i), because the USAC is not an officer, employee, or agent of the United States. Section 3729(b)(2)(i) states a claim is a request for funds which "is presented to an officer, employee, or agent of the United States."

Defendant cites two cases to support its argument. In *In re Incomnet, Inc.*, the Ninth Circuit Court of Appeals concluded the USAC is the designated administrator of the USF, but the USAC "is not simply holding funds in the USF as the FCC's agent." 463 F.3d 1064, 1075 (9th Cir. 2006). The Ninth Circuit noted the FCC "only exercises power over the fund indirectly" and the FCC "has no ability to control the funds in the USF." *Id.* Defendant also cited to *U.S. ex. Rel. Shupe v. Cisco System*, which stated "[a]lthough USAC came about through the actions of

7

Congress and the FCC, and the FCC retains some oversight and regulation, it is explicitly a private corporation owned by an industry trade group." 759 F.3d 379 (5th Cir. 2014).

The Court will not rely on the conclusions made in *In re Incomnet*, *Inc.*, because it was decided prior to the 2009 amendments to 31 U.S.C. § 3729. Following the amendments, the circumstances where a valid claim could be made under § 3729 were broadened, making the case less persuasive.

The Court concludes the USAC does have an agency relationship with the United States. In *Heath*, the court directly addressed the issue of agency by stating:

> Relator alleges that the USAC administered the Fund at the direction of the FCC and that its operations were carried out pursuant to FCC regulations. Further, the FCC authorizes the USAC to administer the E-Rate program, making it responsible for billing contributors, collecting contributions, and disbursing subsidies, 47 C.F.R. § 54.702(a)—(b), but it maintains control of it by requiring it to seek guidance on policy and interpretation questions, § 54.702(c), determining the composition of its board of directors, § 54.703, and maintaining the authority to review its decisions, § 54.719. *This is sufficient to allege an agency relationship, and relator is able to proceed with his suit regarding post-2009 conduct for this independent reason*.

111 F.Supp.3d 923, 928 (E.D. Wis., 2015).

"The United States notes that an entity such as the Administrator can act as the agent of the government without performing inherently governmental functions." *Lyttle v. AT & T Corp.*, No. CIV.A. 2:10-1376, 2012 WL 6738242, at *16 (W.D. Pa. Nov. 15, 2012). "An agency relationship exists where the principal 'initially states what the agent shall or shall not do' and retains authority to give interim instructions and, if necessary, terminate the agency relationship." *Id.* at *17 (citing Restatement § 1.1, cmt f). In *Lyttle*, the United States sufficiently demonstrated "that NECA (and subsequently RLSA) collected and disbursed TRS funds on behalf of the FCC, pursuant to federal law and acted on the FCC's behalf and subject to its

control." *Id.* at 18. As a result, the court concluded NECA and RLS met the definition of agent and permitted the allegation of a false claim submitted under § 3729(b)(2)(A)(i) of the FCA. *Id.*

The combination of both *Lyttle* and *Heath* persuades the Court the USAC has an agency relationship with the United States. Therefore, Relators have asserted a valid claim and Defendant's motion for judgment on the pleadings will be denied.

## IV. CONCLUSION

The Court concludes the E-Rate Program does qualify as "claims" under 31 U.S.C. § 3729. In addition, the Court concludes the USAC is an agent of the United States government. Therefore, the Court will deny Defendant's Motion for Judgment on the Pleadings.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Judgment on the Pleadings [ECF No. 48] is **DENIED.**

Dated this 23rd Day of August, 2017.

*E. Richard Webber*

---
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE